*1285 OPINION.
Thammell :
The petitioner contends that the respondent has erred with respect to the following: (1) Failure to find that certain buildings, machinery, and equipment owned by the petitioner and used in its business in 1919 had on March T, 1913, a value in excess of the cost as carried on petitioner’s books and to use such value as a basis in determining the deductions allowable for depreciation. (2) Failure to allow a paid-in surplus for the value of tangible property, including stockholders accounts paid in to the corporation at the date of incorporation, February 8, 1907, in excess of the par value of the stock issued therefor. (3) Failure to determine invested capital and to use such invested capital as a basis for computing petitioner’s profits tax. (4) Failure to include in invested capital as surplus as, at December 31, 1918, the stockholders’ accounts on the books of the petitioner.
The respondent denies the commission of any error in the determination of the proposed deficiency.
With respect to the petitioner’s contention that a greater value as at March 1, 1913, than shown by its books as cost should have been allowed in computing the deduction for depreciation on its buildings, machinery and equipment, we are unable to determine from the record what amount was shown by the books and used by the respondent as the value at March 1,1913, of these properties. The petitioner urges that on March 1,1913, its buildings had a value of $30,000 and in support thereof introduced testimony of two witnesses. One of the witnesses, L. S. Mohr, testified to a total value of the buildings of $30,000. He stated that the values used by him were based on the construction prices on March 1,1913, considering the condition of the buildings. The other witness testified to a reproduction cost of the buildings in 1913 of $35,660. He testified that the fair market value *1286 of the buildings on March 1, 1913, was $32,100. In determining this value, he began with the reproduction cost, considered the state of the buildings and their suitability for the work of the company, taking into account how much less the buildings might be worth than new buildings of the same character. This witness was both an architect and builder, and had had some experience in valuing property that was being bought and sold.
We have heretofore held that the replacement cost of buildings alone gives no dependable index to their actual value, but in this case the witnesses testified that the reproduction cost was merely considered by them in determining the March 1, 1913, value.
They were competent to express an opinion as to that value, and in the absence of other evidence we must give it due weight and consideration. The preponderance of the evidence is that the buildings were worth $30,000 on March 1, 1913, and we so hold.
In support of its contention that the allowance for depreciation on machinery and equipment had been computed on an improper value as on March 1, 1913, the petitioner submitted the testimony of a milling engineer who in 1913 was a salesman of the particular kind of machinery owned by the petitioner and was employed by the same company which sold the machinery to petitioner. He testified to a value on March 1, 1913, of $81,000. This value was ascertained by reducing the replacement cost on March 1, 1913, of $91,000 by $10,000, representing depreciation. He further testified that he saw this machinery in operation several times during 1913, had observed its condition, and was familiar with the prices at which such machinery was then being sold. We think that his testimony, which was not contradicted, is sufficient to warrant us in holding that the value on March 1, 1913, was $81,000.
The petitioner’s second assignment of error is that the respondent failed to allow a paid-in surplus for the value of tangible property including stockholders’ accounts claimed to have been paid in to the corporation at the date of incorporation in February, 1907, in excess of the par value of the stock issued therefor.
In connection with this contention, the petitioner urges that not only did the physical assets paid into the corporation have a value in excess of the $50,000 par value of its capital stock, but that in addition to the physical assets paid in there were also paid in by the stockholders their credit balances totaling $84,992.47.
The evidence does not show.of what “ all the property and assets ” referred to in the resolution of the board of directors on March 1, 1907, and taken over by the petitioner consisted. For does it show the extent or amount of the “liabilities” referred to in the resolution and assumed by the petitioner. The evidence does not show that any list or any appraisal was made of the assets at the time they *1287 were taken over, but does show that balance sheets were not prepared at that time.
While we do not know the value in 1880 of the real estate and machinery taken over by a predecessor corporation of the petitioner for $50,000 of capital stock, we have found that during 1898 and 1899 the mill was remodeled and new machinery and equipment was installed at a total cost of $29,715.98, that in 1902 a new boiler plant was added at a cost of $9,108.53, and that the foregoing amounts were charged to the accounts of the stockholders in proportion to their stockholdings. There is also uncontroverted evidence that the mill which in 1880 had a capacity of 150 barrels a day had been enlarged from time to time so that in 1907 it had a daily capacity of 1,000 barrels. In 1880 the assets were carried on the books at $50,000. We have also found that the petitioner paid Mabel A. Miller $25,000 for the 167 shares of its stock issued to her for her one third interest in the assets taken over by the petitioner, which did not include the amounts credited to her account.
It also appears that Paul M. Mohr, the son of L. S. Mohr, in September, 1907, purchased 70 shares of the stock of the petitioner at $150 per share; that in the same month L. S. Mohr and O. A. Young entered into an agreement whereby it was provided that in the event of the death of either the survivor should have the privilege of purchasing the stock of the deceased within one year at $200 per share.
All of these facts taken and considered together convince us that the actual cash value of the tangible assets was at least $25,000 in excess of the par value of the stock issued therefor in 1907.
In further support of the contentions for a paid-in surplus, the petitioner urges that at the time of incorporation in 1907 the stockholders contributed to the corporation as paid-in surplus the credit balances of their accounts totaling $84,992.47.
In regard to this, the evidence indicates that Mabel A. Miller was not agreeable to the plan of turning in to the company after its incorporation in 1907 her interest in the predecessor business and that during the year she was paid the amount of the credit to which she was entitled. We also find that on September 14,1907, L. S. Mohr and C. A. Young entered into an agreement which provided that before any stockholder should receive any of the earnings of the corporation Mohr and Young should receive a credit of $1,500 per annum, the same being for interest on working capital that they had furnished to the corporation. In addition to the $1,500 credited to Mohr’s account, the evidence shows that other amounts were credited as interest to his account, as the credit balance of his account was in excess of that of Young. The amounts credited to the share *1288 holders’ accounts represented earnings of the corporation which were taken from the corporate assets. They then became separated from corporate assets and became the property of the stockholders. It was available to them. This is not a case of mere bookkeeping entries, but the actual earnings were available for distribution and were credited to each stockholder as his separate property. In order to be included in the corporate assets, therefore, such earnings so distributed must be turned back to the corporation.
From all the evidence, we are unable to find that the stockholders’ credits were paid in to the corporation so as to constitute paid-in surplus within the meaning of the Act.
The petitioner’s remaining contentions are that the respondent erred in failing to determine its invested capital, to include in its invested capital as surplus at December 31, 1918, the credit balance of the stockholders’ accounts and to use such invested capital as the basis for computing petitioner’s profits tax.
We have found that on December 31, 1918, the credit balances of the stockholders’ accounts totaled $194,887.55, which amount the petitioner insists should be included in its invested capital as surplus since no distributions have ever been made by the corporation to the stockholders by the declaration of dividends.
We have heretofore held that the crediting of a corporation’s profits to the stockholders’ accounts in proportion to their holdings without the formal declaration of a dividend represents a distribution. Appeals of Electrical Supply Co., 1 B. T. A. 658; Kelly-Buckley Co., 1 B. T. A. 1154; and Lobsitz Hardware Co. v. Commissioner, 5 B. T. A. 295. In the instant case, we are of the opinion that the semiannual crediting of petitioner’s profits to the accounts of its stockholders constituted such a distribution thereof as to prevent their being a part of the corporation’s surplus and as such a part of its invested capital. In the light of the facts in this case, we- are of the opinion that the credit balances of the stockholders belonged to them and not to the corporation. When used by the corporation they constituted borrowed capital and therefore under the Act may not be included in invested capital. To the extent that the stockholders contributed any amounts from their credit balances to the corporation in payment for assets bought by the corporation they constituted paid-in surplus.
We are of the opinion that the petitioner’s invested capital for 1919 should include at least the amount of $75,000 which represents the actual cash value of assets paid in in 1907.
Judgment will be entered on 16 days' notice, under Bule 50.
Considered by MorRis, Murdock, and Siefkin.